UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBORAH L. RICE,**

       **Plaintiff,**

v.

       Case No. 2:04-cv-00951
       **JUDGE SMITH**
       **Magistrate Judge Kemp**

**GREAT SENECA**
**FINANCIAL CORP.,** *et al.***,**

       **Defendants.**

## OPINION AND ORDER

Plaintiff Deborah L. Rice ("Plaintiff") has filed this lawsuit against Defendants Great Seneca Financial Corporation ("Great Seneca") and Javitch, Block & Rathbone, LLP ("JB&R"), (collectively "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 *et seq*. This matter is before the Court pursuant to Defendant Great Seneca's Motion for Summary Judgment (Doc. 57). Also before the Court is Defendant JB&R's Motion for Summary Judgment (Doc. 61) and Plaintiff's Motion for Partial Summary Judgment (Doc. 68). Defendants have also filed a Notice of Claim of Unconstitutional Federal Statute (Doc. 33). The United States of America, as intervenor, filed a response to the notice (Doc. 50) as well as a memorandum in opposition to Defendants' motions for summary judgment, limited to the unconstitutionality questions raised by Defendants (Doc. 71). For the reasons that follow, the Court **GRANTS** Defendant Great Seneca's Motion for Summary Judgment (Doc. 57),

**GRANTS** Defendant JB&R's Motion for Summary Judgment (Doc. 61), and **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. 68).

## I. FACTUAL BACKGROUND

Plaintiff Rice is a consumer who opened a credit card account with Providian National Bank on or about June 26, 2000, account number xxxxxxxxxxxx3025.  Plaintiff received the terms and conditions of the credit card, which permitted transfer or assignment of right to payment.  Plaintiff used the account from July 25, 2000 through March 21, 2001, at which time the account had an outstanding balance of $1,994.88.  The account records indicate that final payment before charge off was made on April 6, 2001.  The last fees were posted to the account in November 2001, with final balance being $2,778.99.  The final statement before Plaintiff's account was sold, dated January 28, 2003, reflected the $2,778.99 balance.

In February 2003, Providian National Bank sold Plaintiff's account to Unifund CCR Partners.  Later that same month, Unifund sold the account to Defendant Great Seneca.  With each sale, certain electronic information was transmitted, including the account number, name of the debtor, address, city, state, zip, phone, current balance, charge off date, charge off amount, last payment amount, last payment date, social security number, APR, account opening date, and an issuer flag for each account.  Throughout this time, Plaintiff's account did not accrue additional fees and had an interest rate of 0%.  In August 2003, Defendant JB&R, on behalf of Defendant Great Seneca, sent a validation notice to Plaintiff.  Plaintiff did not timely respond to the validation notice.

In October 2003, Defendant JB&R, on behalf of Defendant Great Seneca, filed a civil complaint against Plaintiff in Jefferson County Court No. 2, Jefferson County, Ohio, which sought to recover the outstanding $2,778.99.  The state court complaint stated:

> 1. There is due the Plaintiff from the Defendant upon an account, the sum of $2,778.99.
>
> 2. A copy of the said Account is attached hereto as "Exhibit A."
>
> 3. Although due demand has been made, Defendant has failed to liquidate the balance due and owing.
>
> Wherefore, the Plaintiff prays for a Judgment against the Defendant in the amount of $2,778.99 with interest at the rate of 10% per annum from date of judgment, and costs of the within action.

(Am. Compl., Ex. A). Attached as Exhibit A to the state court complaint was an account statement from Great Seneca, which included the account number (xxxxxxxxxxxx3025), a closing date of August 8, 2003, a past due amount of $2,778.99, and a balance due on the account of $2,778.99. The account statement resembled an account statement a credit card company might send to a consumer in that it had boxes for "credit limit," "credit available," "previous balance," and "payments and credits." Each of those boxes remained empty or had a "0" in them. In addition, the statement disclosed both the original creditor and the prior owners of the account, Providian and Unifund. Ultimately, Defendants dismissed the state court action without prejudice.

On October 1, 2004, Plaintiff Rice filed her original complaint (Doc. 1). The Amended Complaint was filed on April 27, 2007 (Doc. 37). Plaintiff alleges that paragraph two of the state court complaint and the Exhibit A account statement violate the FDCPA and OCSPA (*See* generally Amended Complaint). Plaintiff has filed a Motion for Partial Summary Judgment, arguing that Defendants are liable for violations of the FDCPA and OCSPA (Doc. 68). Defendants have filed a Notice of Claim of Unconstitutional Federal Statute (Doc. 33), arguing that: (1) the First Amendment precludes the imposition of strict liability under the FDCPA for content of a civil suit; and (2) applying FDCPA to certain pleadings and affidavits filed in state

court renders the FDCPA unconstitutionally vague and overbroad, violates substantive due process, and exceeds Congress' authority under the Commerce Clause of Article I of the United States Constitution. (*See* generally, Defendants' Notice of Claim of Unconstitutional Federal Statute). The United States of America, as intervenor, filed a response to the Notice (Doc. 50), as well as a memorandum in opposition to Defendants' motions for summary judgment, limited to the unconstitutionality questions raised by Defendants (Doc. 71). Defendants JB&R and Great Seneca have also filed motions for summary judgment, arguing that they are entitled to summary judgment with respect to each of Plaintiff's claims (Docs. 57 and 61). These motions have been fully briefed and are now ripe for review.

## II.  RULE 56 STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not be granted if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* effected "a decided change in summary judgment practice," and ushered in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The Court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily appropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party merely to "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record

upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.   DISCUSSION

Plaintiff alleges that Defendants are debt collectors who have violated the FDCPA and OCSPA by engaging in an unfair debt collection practice and a deceptive consumer practice. (*See* generally, Am. Compl.).  More specifically, Plaintiff alleges Defendants violated the FDCPA in two ways: (1) Defendant JB&R violated 15 U.S.C. § § 1692e and e(10) when it represented in paragraph two of the state-court complaint that it had attached a copy of Plaintiff's account because that statement was literally false; and (2) Defendant Great Seneca violated 15 U.S.C. § § 1692e, e(10), and f by generating the account statement that was attached as Exhibit A to the state-court complaint such that it resembled a monthly statement from a credit card issuer. (Pl.'s Mot. for Summ. J. at 1).  Plaintiff argues that this same conduct violated OCSPA, O.R.C. §§ 1345.02 and .03. (*Id.*).  Defendants deny these allegations and argue that they are entitled to summary judgment on all claims.

In 1977, Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  "The Sixth Circuit has noted that the FDCPA is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations." *Hartman v. Asset Acceptance Corp*., 467 F.Supp.2d 769,

774 (S.D. Oh 2004) (Beckwith, J.) (*citing Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992).

Plaintiff has alleged violations of the FDCPA, 15 U.S.C. § § 1692e, 1692e(10), and 1692f.  The relevant portions of those statutes are as follows:

§ 1692e.  False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*   \*   \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

§ 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C.A. § § 1692e, 1692f.

When a Court is evaluating a debt collection practice, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone*, 405 F.Supp.2d 856, 864 (S.D. Ohio 2005) (Holschuh, J.) (*quoting Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). *See also*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Smith v. Transwolrd Systems*, *Inc.* 953 F.2d 1025, 1029 (6th Cir. 1992).  "This standard 'protects all consumers, the gullible as well as the shrewd.'" *Id*. (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  "Although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a

basic level of understanding and willingness to read with care.'" *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509-10 (6th Cir. 2007) (*quoting Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000) (internal citations omitted)). The *Lamar* Court explained, "this standard 'assumes that a validation notice [or, as in this case, a state court complaint] is read in its entirety, carefully and with some elementary level of understanding.'" *Id*. at 510 (*quoting Martinez v. Law Offices of David J. Stern, P.A.*, 266 B.R. 523, 532 (Bankr. S.D. Fla. 2001).

### A.     Paragraph Two of the State Court Complaint

Paragraph two of the state court complaint states: "A copy of the said Account is attached hereto as 'Exhibit A.'" Plaintiff, relying on *Hartman v. Asset Acceptance Corp*., 467 F.Supp.2d 769 (S.D. Ohio 2004) (Beckwith, J.), argues this statement is literally false and therefore violates the FDCPA. (Pl.'s Mot. for Summ. J. at 5).

In *Hartman*, the debt collector had represented that it was a holder in due course of the consumer's obligation. Chief Judge Beckwith found that such a representation was in violation of the FDCPA if: (1) the representation was, in fact false; and (2) the debt collector could not establish entitlement to the bona fide error defense set forth in § 1692k(c). *Hartman,* 467 F.Supp.2d at 779.

In response to Plaintiff's accusations, Defendants argue that the statement contained in paragraph two of the state court complaint is not false. (Defs.' Memo in Opp. to Pl.'s Mot. for Summ. J. at 2-3). Defendants further contend that regardless, any violation was the result of bona fide error, and consequently, liability cannot attach because the bona fide error defense is available to Defendants. (*Id*. at 7; Great Seneca's Mot. for Summ. J. at 12-19). The Court agrees.

Plaintiff, in seeking to convince this Court that Exhibit A to the state court complaint is not truly an account as paragraph two represents, spends a significant amount of time educating the Court on the procedural requirements for pleading a claim for recovery under an account theory under Ohio Civ. R. 10, and the evidentiary standards necessary to prevail under an account theory of recovery. (*See* Pl.'s Mot. for Summ. J. at 8-11). Plaintiff opines that the only way a purchased debt creditor can satisfy these procedural requirements and evidentiary standards is to attach all of the original creditor's records to an account pleading. (*Id.* at 9). Plaintiff next alleges that Exhibit A to the state court complaint, which is generated by Great Seneca rather than by Providian (the original creditor), fails to meet these procedural requirements and evidentiary standards because it "does not begin with a zero balance, does not include any debits or credits, and therefore cannot provide an accurate balance due." (*Id.* at 11-12). Plaintiff concludes, "For this reason there can be no doubt that Javitch's representation in paragraph two of its collection complaint—'a copy of the said Account is attached hereto as 'Exhibit A'—was literally false." (*Id.* at 12).

Conspicuously absent from Plaintiff's analysis is any FDCPA case law supporting her contention that such a procedural challenge to a state court pleading—i.e., the failure to attach all of the original creditor's documents—violates 15 U.S.C. § § 1692e, 1692e(10) or 1692f. And, though the Court declines to pass upon the issue of whether or not Exhibit A to the state court complaint meets Ohio's procedural requirements and evidentiary standards, the Court notes that

Plaintiff has identified no Ohio case law requiring a purchased debt creditor to attach all of the original creditor's records to an account pleading.[1]

As Defendants readily point out, the U.S. Supreme Court has stated, "an ordinary open account[,] as generally defined in the commercial world . . . is an unsettled claim or demand made by the creditor which appears in his account books." *Smith v. Davis*, 323 U.S. 111, 114 (1944).  Under Ohio law, "[I]n an action on an account, the word 'account' has reference to the type of relationship between the parties and not to a particular book or record." *American Sec. Service, Inc. v. Baurmann*, 32 Ohio App.2d 237, 245 (1972); *Mt. Sinai Hospital of Cleveland v. McCurdy,* 1979 WL 210165, *5 (1979) ("'Account' is a word of ordinary and common acceptance in legal terminology and may be defined as an unsettled claim or demand by one person against another, based upon a transaction creating a debtor and creditor relationship between the parties which is usually but not necessarily represented by an ex parte record kept by one or both of them." (*quoting* 1 Am. Jur. 2d 371, Accounts and Accounting, sec. 1)).

In the instant case, there is no factual dispute that at the time the at-issue account statement was created and attached to the pleading by Defendant JB&R, an unsettled claim existed on the books of Defendant Great Seneca owed by the Plaintiff in the precise amount of $2778.99.  Further, there is no factual dispute over the format or content of the Exhibit A account statement attached to the state court complaint, which listed $2778.99 as the "balance due" to Defendant Great Seneca as an assignee of Unifund and Providian as a new transaction dated August 8, 2003.

---

[1] Instead, Plaintiff's Motion refers to several Municipal Court orders from 2005 and 2006 where Ohio trial courts have granted motions for a more definite statement, as well as a sanction order on appeal in *Capital One Bank v. Day,* 4th App. Dist. No. 07-CA-3164.  These orders are irrelevant to the 2004 filing currently before this Court.  Further, the orders demonstrate that Ohio trial courts are capable of policing their own dockets.

The Court finds that Plaintiff has failed to demonstrate that the statement contained in paragraph two of the state court complaint is false. Instead, Defendants have presented evidence demonstrating that it did, in fact, have a valid claim against Plaintiff and Exhibit A was a record generated by Defendant Great Seneca that accurately reflected the terms of that account. Accordingly, the Court finds that Defendants' statement in paragraph two of the state court complaint did not violate 15 U.S.C. § § 1692e or 1692e(10).

**B.** **Exhibit A**

Plaintiff next argues that even if Defendant JB&R's representations concerning Exhibit A to the state court complaint were literally true, Defendant Great Seneca nonetheless violated 15 U.S.C. § § 1692e, e(10), and f by generating the Exhibit A account statement in such a manner that it was misleading. (Pl.'s Mot. for Summ. J. at 1, 13-15).

Defendants counter that the format of its billing statements is "intended to enhance consumer understanding, and has never been claimed or shown to be confusing, misleading or deceptive." (Defs.' Memo. in Opp. to Pl.'s Mot. for Summ. J. at 6). Defendants rely on *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 512 -513 (6th Cir. 2007), and contend that Plaintiff's failure to propose a reasonable, alternate inaccurate reading of the account is fatal to her claims.

In *Lamar*, the Sixth Circuit followed the Seventh and Second Circuits in holding that claims under § 1692e and § 1692f relating to false, deceptive, misleading or unfair or unconscionable conduct by a debt collector are to be evaluated in the same manner as claims under § 1692g, that is, "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." 503 F.3d at 512-13 (*quoting Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir. 1996) and *McMillan v. Collection*

*Professionals Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) ("Whether or not a [communication] is 'false, deceptive, or misleading' (in violation of § 1692e)" is an inquiry similar to "whether a [communication] is confusing in violation of § 1692g.")). *Accord*, *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008).

The Court has already rejected Plaintiff's contention that Defendant JB&R made a false representation concerning the attachment of an "Account" as Exhibit A to the state court complaint. (*See* discussion, s*upra*, Section III.A). Plaintiff is now urging the Court to find that even though the statement has been found to be literally true, it is misleading. (Pl.'s Mot. of Summ. J. at 13). Plaintiff appears to advance two slightly different reasons for why she contends the Exhibit A statement is misleading. First, Plaintiff claims that the least sophisticated consumer would be "fooled" into thinking that the Exhibit A statement was "generated by the issuer of the original credit card." (*Id*. at 14). Second, she contends that: "The unsophisticated consumer, probably the sophisticated consumer, and possible even the unsophisticated lawyer or judge—could be duped into thinking that Great Seneca actually had an 'Account' in its files and that this was simply the last page of it." (*Id*. at 15).

Plaintiff correctly asserts that literally true statements can be misleading, and thus in violation of the FDCPA, § § 1692e and 1692e(10). *See*, *e.g., Gionis v. Javitch, Block & Rathbone LLP*, 238 Fed. Appx. 24 (6th Cir. 2007); *McMillian*, *supra*, 455 F.3d at 758. And, as set forth above, Plaintiff properly points out that this Court must evaluate Exhibit A objectively from the standpoint of the least sophisticated consumer to determine if the statement is false, deceptive or misleading. The Court cannot, however, agree with Plaintiff's conclusion that the format of the Exhibit A statement is misleading in violation of the FDCPA.

First, the Court rejects Plaintiff's argument that the least sophisticated consumer would be fooled into believing that the Exhibit A account statement was generated from the original issuer of the credit card. As set forth above, the Sixth Circuit has stated that the standard assumes that the at-issue document "is read in its entirety, carefully and with some elementary level of understanding." *Lamar*, 503 F.3d at 510 (*quoting Martinez,* 266 B.R. at 532). The Exhibit A statement specifically disclosed both the original creditor and the prior owner of the account, Providian and Unifund. The statement identified Great Seneca Financial Corp. as the assignee of the account. In addition, the statement included the account number (xxxxxxxxxxxx3025) assigned by Providian and a balance due on the account of $2,778.99. The least sophisticated consumer, with a careful reading of the Exhibit A statement, would understand that Great Seneca was an assignee of Providian, and that the statement was generated by Great Seneca to collect on the Providian account. Plaintiff has failed to present any evidence to the contrary. She has presented no affidavits, no expert opinion, nothing to demonstrate that there is a genuine issue of fact as to the nature of the Exhibit A statement. She does not and cannot make a claim of falsity as to the amount owed and there is no genuine factual dispute that she was liable for the debt for the precise amount claimed at the time the suit was filed.

Second, the Court rejects Plaintiff's argument that the least sophisticated consumer would be duped into thinking that this was just the last page of an account contained in Defendant Great Seneca's files. Neither the Exhibit A statement, nor the state court complaint itself, contain any representations regarding what Defendant Great Seneca actually had in its file or the manner in which account records are maintained. Instead, the Exhibit A statement clearly identifies that Defendant Great Seneca was the assignee of the balance due under the debt Plaintiff owed to Providian in the amount of $2,778.99. As set forth above, the Exhibit A

statement even contained the account number assigned by Providian.  Again, Plaintiff fails to present any evidence demonstrating that the Exhibit A account statement is deceptive, misleading, or an unfair means of attempting to collect a debt under 15 U.S.C. § § 1692e, 1982e(10) or 1692f.  The Court finds that it is not reasonable for a consumer who owes a legitimate debt, upon receipt and reading the pleading and attachment, to be confused, misled or deceived over how much paper substantiating his or her debt is in the file of Defendant Great Seneca.  Accordingly, Plaintiff's claims fail as a matter of law.

### C. Bona Fide Error Defense

The Court finds that even if Plaintiff had demonstrated that genuine issues of fact existed, Defendants are entitled to the bona fide error defense.

The FDCPA's bona fide error provision shields a debt collector from liability for violating the FDCPA in certain instances. *See* 15 U.S.C. § 1692k(c).  The bona fide error provision provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.A. § 1692k.  The bona fide error defense applies to mistakes of law as well as to clerical errors. *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761, 765 -767 (S.D. Ohio 1999) (Graham, J.).  Three factors should be considered when performing an analysis of whether the bona fide error defense applies: (1) whether the alleged violation was unintentional; (2) whether the alleged violation resulted from a bona fide error; and (3) whether the debt collector maintained procedures reasonably adapted to avoid errors. *See Beck v.*

*Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

Defendant Great Seneca has established the elements of the bona fide error defense to the FDCPA. Defendant Great Seneca's representatives have testified that the state court complaint's Exhibit A account statement was intended to serve as evidence of Great Seneca's ownership of the debt, and it was not intended to mislead, deceive or misrepresent the character or nature of the debt. (Great Seneca's Mot. for Summ. J. at 13). The representatives further testified that no person has ever claimed that they were misled, deceived, or that they misunderstood the Great Seneca account statement. (*Id.*). Defendant Great Seneca has also set forth in great detail the process for obtaining the debts and electronic systems utilized to acquire, store and transmit the financial information for each account. (*Id.* at 13-18). Finally, Defendant Great Seneca points out that they followed existing case law, that they engaged a law firm specializing in debt collection to manage its portfolio, and that the law firm was responsible for compliance with the FDCPA. (*Id.* at 18-19).

Defendant JB&R has also established the elements of the bona fide error defense to the FDCPA. Defendant JB&R correctly asserts that it reasonably relied on its client's representations about Plaintiff's account. *See, e.g.*, *Jenkins v. Heintz*, 124 F.3d 824, 832 (7th Cir. 1997), *cert. denied*, 523 U.S. 1022 (1998) (a debt collector may rely on representations made by its client and has no duty to independently investigate the claims presented for collection); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (same). Defendant JB&R's co-managing partner, Joel Rathbone, has represented that it was his understanding in 2003 that a purchased debt creditor's claim on a credit card debt could be pled as an account claim, whether or not the purchased debt creditor had possession of all the account documentation, and that a

-15-

business record created by the purchased debt creditor reflecting the amount owed on the credit card debt was a permissible practice under Ohio law, and was not prohibited by the FDCPA. (Rathbone Decl. ¶¶ 18-21).

Plaintiff has failed to rebut Defendants' arguments.  Instead, Plaintiff incorrectly states that Defendants' bona fide error defense is not ripe because it responds to violations not asserted by Plaintiff.  (Pl.'s Reply at 5-6; Pl.'s Memo. in Opp. to Def. JB&R's Mot. for Summ. J. at 3-4; Pl.'s Memo. in Opp. to Def. Great Seneca's Mot. for Summ. J. at 2-3).

The Court finds that Defendants are entitled to the bona fide error defense because they have satisfied their burden of proof under 15 U.S.C. § 1692k(c), and Plaintiff has failed to raise any genuine issue of material fact regarding any of the elements of the defense.

Judge Barrett recently quoted a passage from the Sixth Circuit in *Fed. Home Loan Mortg. Corp. v. Lamar,* 503 F.3d 504, 514 (6th Cir. 2007) (*quoting Jacobson v. Healthcare Fin. Servs.*, 434 F.Supp.2d 133, 138 (D.N.Y.2006)).  *Miller v. Javitch, Block & Rathbone*, 534 F.Supp.2d 772, 778-779, 2008 WL 400256, *5 (S.D. Ohio 2008) (Barett, J.).  Though the FDCPA claims of the *Miller* plaintiff were premised upon a different set of factual allegations, the quoted passage is no less applicable to the instant case:

> As a district court in the Second Circuit recently noted "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation." *Jacobson*, 434 F.Supp.2d at 138. The court in *Jacobson* continued:
>
> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's

> personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." Id. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs . . . .
>
> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $ 400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and-rather than simply pay what he owes-repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).
>
> *Id*. at 138-39 (emphasis added). We echo *Jacobson's* sentiments and concerns. Lamar fits the description of *Jacobson's* hypothetical consumer to a tee, and we will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." Id. at 138.

*Lamar*, 503 F.3d at 514 (*quoting Jacobson* 434 F.Supp.2d at 138).

### D.      Unconstitutionality of the FDCPA

Based upon the foregoing holdings, the Court finds it unnecessary to address Defendants' arguments with respect to the unconstitutionality of the FDCPA. As directed by the U.S. Supreme Court:

> This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided. This same rule should guide the lower courts as well as this one.

*Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136-37 (1946) (internal citations and footnote omitted). *See also*, *Rice v. Walls*, 213 F.2d 693, 698 (6th Cir. 1954) ("The principle of avoiding constitutional questions is one which was conceived out of considerations of sound

-17-

judicial administration. It is a traditional policy of our courts.") (citations and quotations omitted); *Mihlek Corp. v. Michigan*, 814 F.2d 290, 296 (6th Cir. 1987).

**E.    OCSPA Claims**

Plaintiff alleges that Defendants' conduct has violated the OCSPA. (Pl.'s Mot. for Summ. J. at 16).  Plaintiff states, "The remaining OCSPA question for purposes of this motion is whether a debt collector's false representation concerning the nature of an attachment to a collection complaint, and/or the simulated monthly statement, are 'unfair or deceptive act(s) or practice(s)' prohibited by Ohio Rev. Code § 1345.02(A). (*Id*.).

Because this Court has found that: (1) Defendant JB&R's representation in paragraph two of the state court complaint was *not* false; and (2) Defendant Great Seneca's Exhibit A account statement was *not* deceptive, there is nothing to sustain Plaintiff's OCSPA claim.

## IV.    DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** Defendant Great Seneca's Motion for Summary Judgment (Doc. 57), **GRANTS** Defendant JB&R's Motion for Summary Judgment (Doc. 61), and **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. 68).

The Clerk shall remove Documents 57, 61 and 68 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**