**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Deborah L. Rice, | ) | CASE NO. 2:04-cv-0951 |
| | ) | |
| Plaintiff, | ) | JUDGE: SMITH |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE: KEMP |
| | ) | |
| Great Seneca Financial Corp., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| Delores J. Hartman, | ) | CASE NO. 2:04-cv-972 |
| | ) | |
| Plaintiff, | ) | JUDGE: SMITH |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE: KEMP |
| | ) | |
| Great Seneca Financial Corp., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTION TO MAGISTRATE JUDGE'S
OPINION & ORDER (DOC. NO. 105)**

Now comes Defendant, Javitch, Block & Rathbone, LLP, by and through counsel, and hereby objects pursuant to 28 U.S.C. §636(b)(1)(A) and Fed.R.Civ.P. 72(a) to the magistrate judge's opinion and order (Doc. No. 105), which is contrary to law, for the reasons more fully set forth in the accompanying memorandum in support, attached hereto and incorporated herein by reference as though fully rewritten herein.

Respectfully Submitted,

_/s/ Michael D. Slodov_
Michael D. Slodov, SCR#0051678
JAVITCH, BLOCK, & RATHBONE LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(216) 623-0000 ext. 3057
(fax) (216) 685-3038
(e-mail) mslodov@jbandr.com
Attorneys for Defendant

**PROOF OF SERVICE**

I hereby certify that on June 24, 2010, a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

   /s/ Michael D. Slodov
   Michael D. Slodov, SCR #0051678

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Deborah L. Rice, | ) | CASE NO. 2:04-cv-0951 |
| | ) | |
| Plaintiff, | ) | JUDGE: SMITH |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE: KEMP |
| | ) | |
| Great Seneca Financial Corp., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| Delores J. Hartman, | ) | CASE NO. 2:04-cv-972 |
| | ) | |
| Plaintiff, | ) | JUDGE: SMITH |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE: KEMP |
| | ) | |
| Great Seneca Financial Corp., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
OBJECTION TO MAGISTRATE JUDGE'S
OPINION & ORDER (DOC. NO. 105)**

On June 18, 2010, Magistrate Judge Kemp issued an opinion and order, wherein the Magistrate Judge "determine[d] whether the additional constitutional questions the defendants are attempting to raise require certification to the Attorney General pursuant to 28 U.S.C. §2403(a) and Fed.R. Civ. P. 5.1(b)." Doc. No. 105, p. 1. Going beyond the initial question posed, the opinion and order purports to find that the constitutional issues articulated by the Defendants are foreclosed by the appellate mandate, and the order defines and establishes the evidentiary standard of proof governing Plaintiffs' remaining claims. For the following reasons, although Defendant does not take issue with the ultimate conclusion reached on whether certification is required, the opinion and order is nonetheless, contrary to law.

In passing on objections to a magistrate judge's report and recommendation, factual determinations are reviewed under the clearly erroneous standard, while legal determinations are

evaluated under the contrary to law standard. *Gandee v. Glaser,* 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd.,* 19 F.3d 1432 (6th Cir.1994). "A finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Search Warrants Issued Aug. 29, 1994,* 889 F.Supp. 296, 298 (S.D.Ohio 1995). If on review, the court determines that the evidence does not support the factual determination, or that the magistrate judge's construction of the evidence is not reasonable, the finding is clearly erroneous. *Geiger Bros. Mechanical Contractors v. Lockheed Martin Utility Services, Inc.,* 200 Westlaw 1456916, *1 -2 (S.D.Ohio 2000) (citing *Heights Community Congress v. Hilltop Realty Corp.,* 774 F.2d 135, 140 (6th Cir.1985)).

Under the "contrary to law" standard, should the court determine on plenary review that the report and recommendation of the magistrate judge ignores or contradicts the law, or governing Rules of Civil Procedure, it should be rejected. Id. Because the opinion only purports to make determinations of law, these objections should be evaluated under the contrary to law standard.

1. The Opinion & Order misapprehends the Court's role under 28 U.S.C. §2403(a) and Fed.R.Civ.P. 5.1(b), where the United States is currently a party (Doc.No. 51).

28 U.S.C. §2403(a) provides:

(a) In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof **is not a party**, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Similarly, Fed.R.Civ. P. 5.1 applies where the United States is not a party. Notice is required where "a federal statute is questioned **and the parties do not include the United States**, one of its agencies, or one of its officers or employees in an official capacity." Fed.R.Civ. P. 5.1(a)(1)(A). Where the United States is already a party, neither the statute nor the rule, applies. *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1007 (6th

Cir. 2006)(where the Secretary of State was already a party, 28 U.S.C. §2403 "is inapposite."); *Sovereign News Co. v. Falke*, 448 F.Supp. 306, 314, n. 13 (N. D. Ohio 1977); *Peterson v. Prosser*, 2008 WL 2857403, *1 (N.D. Iowa 2008)( no separate notice of constitutional challenge is required under Rule 5.1 where government officer is named as a party in the case); 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1154 (3d ed.). Here, the Court granted the United States permission to intervene, and it has been a party to these proceedings since June 25, 2007. (Doc. No. 51, Case No. 2:04-cv-0951; Doc. No. 65, Case No. 2:04-cv-972).

Even if the statute or the rule permitted some alternate action by the court when faced with a post-remand modified claim of unconstitutionality where the United States was already a party to the action, the Court's duty of certification is non-discretionary and does not permit the court to dispose of the certification requirement, even if the Court views the constitutional issues as frivolous. *Wallach v. Lieberman,* 366 F.2d 254, 257, n. 8 (2d Cir. 1966); *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir. 1985); *Jones v. City of Lubbock,* 727 F.2d 364, 372 (5th Cir. 1984); Advisory Committee Notes to Fed.R.Civ.P. 5.1; *Stagemeyer v. County of Dawson, NE,* 205 F.Supp.2d 1107, 1119, n. 4 (D. Neb. 2002).

Had the opinion and order begun and concluded with the statement that "the additional constitutional questions listed in the defendants' articulation of remaining issues do not require certification to the Attorney General under 28 U.S.C. §2403(a) and Fed. R. Civ. P. 5.1(b)," Doc. No. 105, p. 8, Defendant would have no objection.

Yet, the rationale given to support the conclusion in the opinion is anathema and contrary to law. And, because the rationale for the opinion has the potential to become law of the case, the following explanation is offered to refute the additional conclusions reached in the decision, and for rejection or modification of the opinion and order.

2. The constitutional issues are not foreclosed under the appellate mandate or law of the case doctrine because the Sixth Circuit decision does not discuss, address or decide whether the account statement is inherently misleading, misleading in fact or potentially misleading.

Assuming *arguendo* that it was proper for the opinion to delve into the impact of the appellate mandate on the issues articulated by the defendant, the three constitutional issues set forth at Doc. No. 122 (Case 2:04-cv-00972), page 6, quoted at Doc. 105, p. 6, were not directly, or by necessary inference, decided by the Court of Appeals or this Court, and are therefore, not precluded by the law of the case doctrine or the mandate rule. See *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997); *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) ("The law of the case doctrine ... precludes a court from reconsideration of issues 'decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.' "); *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.* 352 F.3d 599, 606 (2d Cir. 2003)("Put simply, the law of the case 'does not extend to issues an appellate court did not address.'")(quoting *Moore v. Anderson,* 222 F.3d 280, 284 (7th Cir.2000); *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004):

> 'In essence, the mandate rule is a specific application of the law-of-the-case doctrine.' … 'The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals.' The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand.

(quoting *United States v. Campbell,* 168 F.3d 263, 265, 266-68 (6th Cir.1999)).

As set forth in Defendant's articulation of issues at note 25, the Sixth Circuit considered the First Amendment and other constitutional arguments raised in the context of determining whether they provided alternative grounds to affirm this court's ruling on summary judgment. 569 F.3d. 606, 615, n. 7. The Sixth Circuit articulated what the First Amendment does and does not protect; in finding that the First Amendment *did not foreclose the claims*, the Court stated: "there are various indications that the First Amendment and any common-law privilege that applied to statements made during judicial proceedings **do not foreclose the current actions**." 569 F.3d 606, 615

4

(emphasis added). See also id at 617 "(we decline their request to affirm the district court's judgment on these alternate grounds."). The Sixth Circuit observed that the **allegations** made in the amended complaint, **if proven**, would not be protected by the First Amendment – a point Plaintiffs emphasized on certiorari in the U.S. Supreme Court. See Doc. No. 122-3, p. 15, 18-19, 21, 27/32, (the Sixth Circuit resolved the constitutional issues "on the assumption that a jury could find that petitioners' statements were knowingly false," as it "assumed that that Great Seneca and Javitch intentionally misrepresented that Exhibit A was an 'account.'").

To say, as the Sixth Circuit did, that the entire action is not foreclosed by the First Amendment, does not directly or by necessary inference, determine whether the pleadings at issue will be shown by the **evidence**, to be entirely beyond the protection of the First Amendment. "'If the 'protections afforded commercial speech are to retain their force,' . . . we cannot allow rote invocation of the words 'potentially misleading' to supplant the [government's] burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Ibanez v. Florida Department of Business and Professional Regulation*, 512 U.S. 136, 146, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994)(internal citations omitted). See also *infra*, §2(a).

Significantly, the majority opinion does not discuss, address or decide whether the account statement is inherently misleading, misleading in fact, or only potentially misleading– instead, the court found "there is a genuine issue of material fact as to whether this document would mislead the least sophisticated consumer. Accordingly, summary judgment is improper." *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 613 (6ᵗʰ Cir. 2009). Compare with *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 618 (Oliver, J., concurring)(" I write separately to discuss the way in which I find Great Seneca's document to be ***potentially misleading*** to the least sophisticated consumer.").[1]

---

[1] *Marks v. United States*, 430 U.S. 188 (1977) observed that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of … Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . ..'" (quoting *Gregg v. Georgia*, 428

The Sixth Circuit's discussion of the First Amendment interests at stake and its statement that "an allegedly false statement is **not immunized** by the Petition Clause" only determined that the First Amendment did not provide independent grounds to affirm the judgment dismissing the action. 569 F.3d at 616.

    a. Whether the account statement is beyond the protection of the First Amendment as inherently misleading, potentially misleading, misleading in fact or not misleading at all, remains in issue.

The Supreme Court has developed a hierarchical test to determine whether the government could permissibly regulate commercial speech as 'misleading.' *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Thompson v. Western States Medical Center* 535 U.S. 357, 367, 122 S.Ct. 1497, 1504 (2002):

> In *Central Hudson, supra,* we articulated a test for determining whether a particular commercial speech regulation is constitutionally permissible. Under that test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, we next ask "whether the asserted governmental interest is substantial." *Id.,* at 566, 100 S.Ct. 2343. If it is, then we "determine whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." *Ibid.* Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

See also *In re R.M.J.*, 455 U.S. 191, 200, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); *Peel v. Attorney Disciplinary Comm'n*, 496 U.S. 91, 106 (1990); *Bates v. State Bar of Arizona*, 433 U.S. 350, 375 (1977); *Zauderer v. Office of Disciplinary Council*, 471 U.S. 626, 638 (1985); *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). See also e.g., *Parker v. Com. of Ky., Bd. of*

---

U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976)). Where instead, a Court of Appeals decision is at issue, it would be illogical to conclude that this narrowest grounds rule has no application. Yet, Magistrate Judge Kemp points out that this Court has previously held "concurring opinions have no legal effect, and thus, are in no way binding on any court." *Bronson v. Board of Education,* 510 F.Supp. 1251, 1265 (S.D.Ohio 1980). The *Bronson* Court's conclusion is not supported by any cited precedent, and in later proceedings, the Sixth Circuit reversed. See *Bronson v. Board of Educ. of City School Dist. of City of Cincinnati,* 687 F.2d 836 (6th Cir. 1982). Thus, the vitality of the "no effect" rule cited in *Bronson* is questionable. Further, where a three-judge court issues a plurality decision with a dissent and a concurrence, each judge expressing their own views separately, and the concurrence makes out the majority, understanding the rationale for the concurring judges opinion in light of the narrowest grounds in common with the majority, would be consistent with the rule set forth in *Marks.*

*Dentistry,* 818 F.2d 504, 509 (6th Cir. 1987); *Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Commission,* 24 F.3d 754, 756 (5th Cir.1994) (exploring the Supreme Court's "hierarchy of misleading commercial speech" jurisprudence).

In order to end the *Central Hudson* analysis on the first prong, the speech must be "inherently misleading," which is defined in *Central Hudson* as "more likely to deceive the public than to inform it." *Central Hudson,* 447 U.S. at 563, 100 S.Ct. 2343 (citations omitted); see also *In re R.M.J.,* 455 U.S. at 202, 102 S.Ct. 929; *International Dairy Foods Ass'n v. Boggs,* 2009 WL 937045, 6 (S.D.Ohio 2009). Whether speech is "inherently misleading" depends upon, inter alia, the "possibilities for deception," *Friedman v. Rogers,* 440 U.S. 1, 13, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); whether "experience has proved that in fact that such [communications are] subject to abuse," *In re R.M.J.,* 455 U.S. at 203, 102 S.Ct. 929; and, "the ability of the intended audience to evaluate the claims made." *Association of Nat. Advertisers, Inc. v. Lungren,* 44 F.3d 726, 731 (9th Cir. 1994). See also *Edenfield v. Fane,* 507 U.S. 761, 770-71, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993); *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 561, 121 S.Ct. 2404, 2425, 150 L.Ed.2d 532 (2001).

"Commercial speech that is only potentially misleading" is still entitled to constitutional protection under the First Amendment." *Alexander v. Cahill,* 598 F.3d 79, 89 (2d Cir. 2010); *Parker v. Com. of Ky., Bd. of Dentistry,* 818 F.2d 504, 510 (6th Cir. 1987); *International Dairy Foods Ass'n v. Boggs* 2009 WL 937045, 6 (S. D. Ohio 2009).

Thus, the first determination required in assessing whether speech is or is not entitled to constitutional protection requires a threshold determination to be made by the court whether it is either inherently misleading or only potentially misleading. *Byrum v. Landreth,* 566 F.3d 442, 446 (5th Cir. 2009) (construing *Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 367, 122 S.Ct. 1497, 1504, 152 L.Ed.2d 563 (2002)). If the speech is protected because it is true or only potentially misleading, the statute must meet the three *Central Hudson* requirements to pass constitutional muster: (1) the

asserted government interest in the regulation must be substantial; (2) the regulation must directly advance the governmental interest served; and (3) the regulation may not be broader than necessary to advance that governmental interest. *Byrum v. Landreth*, 566 F.3d 442, 446. In this regard, "[i]t is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993).

There was no threshold determination made by the Court of Appeals or this Court that the Exhibit A was inherently misleading, "concerns unlawful activity" or conversely that it was "true or only potentially misleading." Because the First Amendment protection relating to misleading speech is only lost where the Court determines the speech is inherently misleading, and the Sixth Circuit's holding merely found genuine issues of material fact whether the account statement would be misleading, neither the law of the case or the mandate foreclose the constitutional issues raised. *Cf. Lindquist v. City of Pasadena, Tex.* 656 F.Supp.2d 662, 679 (S.D.Tex. 2009). Nothing in the Sixth Circuit decision discusses nor decides any of the articulated issues, nor can the magistrate's decision be construed as making that determination either. As the United States observed, "[i]f and until, the finder of fact determines that Javitch's statements made in the state court litigation violated the FDCPA but were not inherently likely to deceive or deceptive and did not contain intentional or reckless falsehoods, no constitutional issue is present at this stage of the litigation." Doc. No. 128 (Case No. 2:04-cv-00972).

Assuming the petitions at issue here can and should be evaluated just like commercial speech because the claim is premised on a purported confusing or misleading representation, Exhibit A and its accompanying complaint are entitled to constitutional protection until shown to be actually or inherently misleading. If Exhibit A is not found to be actually or inherently misleading, but the potential for deception remains, then as a potentially misleading representation, it still enjoys

constitutional protection. Unlike for the former two categories, potentially misleading speech cannot be banned. It is considered protected by the First Amendment, and restrictions on a potentially misleading representation must be analyzed under the remaining three prongs of the *Central Hudson* test. Defendant's view is that liability under the FDCPA cannot attach without an evidentiary showing that either the document is inherently misleading, it was in fact misleading or deceptive, or as merely potentially misleading, where the government meets the three additional *Central Hudson* requirements.

> b. Whether the account statement is beyond the protection of the First Amendment as sham, baseless, or contained "intentional and reckless falsehoods" that materially affected the core of a litigant's case, remains in issue.

Neither the Sixth Circuit decision, the Plaintiffs or Defendants statement of issues, the United States response to Defendants' articulation of issues, or magistrate judge's order, address the interplay between the evidentiary standard for showing constitutionally permissible regulation of commercial speech under the speech clause of the First Amendment, the Supreme Court's Petition Clause cases and the least sophisticated consumer standard used under the FDCPA. On this basic level, Defendants object to the opinion and order because there was no briefing on this question; moreover, the decision misses the mark, and is contrary to law.

The Supreme Court's petition clause cases support the proposition that filing a suit supported by probable cause, which is not objectively baseless, contains no materially false representations, and brought in good faith, is protected under the First Amendment. *McDonald v. Smith*, 472 U.S. 479, 484 (1985); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993); *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983); *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002). The Sixth Circuit observed that assuming the First Amendment applied, it would not protect "sham petitions, baseless litigation, or petitions containing "intentional and reckless falsehoods." Id. at 616. This of course, begs the question raised by

9

Defendants articulation of issues– whether the pleading in issue will be **shown** to be a sham, baseless or to have contained intentional and reckless falsehoods. Some courts hold that expressions which constitute petitions within the meaning of the First Amendment, are evaluated differently than commercial speech, when the expression involves the formal invocation of a governmental mechanism for redress. *Foraker v. Chaffinch* 501 F.3d 231, 235-37 (3d Cir. 2007); *Van Deelen v. Johnson* 497 F.3d 1151, 1156 (10th Cir. 2007); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931-33 (9th Cir. 2006). But see *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1060 (2d Cir.1993)(holding right to petition analysis is the same as speech analysis)(citing *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985)). Thus, although the petition clause has been described as "cut from the same cloth" and affords no greater protection than the speech clause, the inquiries under the speech clause and petition clause are analytically distinct. *Foraker,* supra. Nothing in the Sixth Circuit's decision hints at which inquiry applies here.

To the extent the petition clause analysis applies, Defendant's view is that unless there is a showing that the pleading was a sham, baseless, or contained "intentional and reckless falsehoods" that materially affected the core of a litigant's case, the First Amendment protects the petition.

    c.  Whether the least sophisticated consumer standard comports with the First Amendment remains in issue.

Defendants concede that if the prohibitions against misleading representations contained in 15 U.S.C. §1692e are construed coextensively with the First Amendment, then there is no constitutional issue. The Magistrate's opinion and order, however, assumed no interstitial gap exists between the First Amendment protection for potentially misleading commercial speech and the evidentiary requirement underlying the least sophisticated consumer standard applicable to FDCPA, finding that no constitutional issue arises if Plaintiffs show that "Exhibit A is misleading with respect to the least sophisticated consumer." Doc. No. 105, p. 7. That assumption is incorrect.

10

Although the Sixth Circuit held in this case, that the least sophisticated consumer standard applies to claims that Exhibit A was deceptive or misleading under 15 U.S.C. §§1692e, 1692e(10) and 1692f, it did not decide that a finding that a representation was misleading under the least sophisticated consumer standard would satisfy the requirements of the First Amendment. Nor did it decide what evidence was required to "prove that Exhibit A would mislead the least sophisticated consumer." Doc. No. 105, p. 7.

There are only a handful of Sixth Circuit decisions to broach the question of what evidence shows that a debt collector's communication was (was not) deceptive or misleading with respect to the least sophisticated consumer. Compare *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 401 (6th Cir. 1998); *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 441 (6th Cir. 2008); & *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 594 (6th Cir. 2009)(quoting *Miller v. Javitch, Block & Rathbone,* 534 F.Supp.2d 772, 776-77 (S.D.Ohio 2008)).  None of these decisions, nor the Court of Appeals decision in this case, considered whether a deceptive or misleading representation under the FDCPA, equated with a showing that the communication was not entitled to constitutional protection because it was either: (a) inherently misleading; (b) in fact deceptive; or (c) (where the communication was a pleading) that the pleading was a sham, baseless, or contained "intentional and reckless falsehoods" that materially affected the core of a litigant's case.

In contrast, due in part to the concerns over adjudicating how a hypothetical consumer (whether the least sophisticated or merely unsophisticated) might construe a debt collection communication, and implicitly because of *Central Hudson,* which defines inherently misleading communications as "more likely to deceive the public than to inform it," supra, the Seventh Circuit has observed Courts have "no way of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable [the Court] to conclude that the [FDCPA] statute has been violated. For that, evidence is required, the most useful sort being the kind of consumer

survey described in *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1060-61 (7th Cir.1999)." *DeKoven v. Plaza Associates,* 599 F.3d 578, 580 (7th Cir. 2010); see also *Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757 (7th Cir.2009); *Williams v. OSI Educational Services, Inc.,* 505 F.3d 675, 678 (7th Cir.2007). Also, compare *LeBlanc v. Unifund CCR Partners* 601 F.3d 1185, 1194-97 (11th Cir. 2010) with FTC Policy Statement on Deception, appended to *In re Cliffdale Assocs.*, 103 F.T.C. 110, 174-84 (1984) (online at http://www.ftc.gov/bcp/policystmt/ad-decept.htm).

After all, "[t]he debt collector can't be blamed if consumers don't understand his dunning letter unless he should have added or subtracted something to make it clearer. The plaintiff thus has 'to show that the additional language of the letters unacceptably increases the level of confusion; many unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice.'" Id. (quoting *Johnson v. Revenue Management Corp.*, supra, 169 F.3d at 1060). See also *Ruth v. Triumph Partnerships,* 577 F.3d 790, 799-804 (7th Cir. 2009).

3. The falsity claims are no longer in issue; but if they are, the least sophisticated consumer standard does not apply.

One of the main points of disagreement between the Plaintiffs and Defendant relates to whether the falsity claims have been put to rest. Compare Doc. No. 118, ¶A with Doc. No. 122, ¶2(b), p. 3. On summary judgment, this Court held the complaint was not literally false. 556 F.Supp. 2d 792, 799; 2008 WL 2169051, *3. On appeal, Plaintiff argued it was error for this court to have denied Plaintiff's Motion for summary judgment on the falsity claim as a matter of law. Doc No. 122-1, Appellant's brief, pp. 21-24, 43; Doc. No. 122-2, Reply, p. 10. The Court of Appeals considered the issue, observing the claim involved a predicate question that turned on state law, which it did not decide; but the Sixth Circuit did not reverse the denial of Plaintiff's Motion for Summary Judgment, this Court's grant of summary judgment to the Defendants on the falsity claim, this Court's determination on what the word "account" meant, nor this Court's finding of fact that

12

"there is no factual dispute that at the time the at-issue account statement was created and attached to the pleading by Defendant JB & R, an unsettled claim existed on the books of Defendant Great Seneca owed by the Plaintiff in the precise amount [alleged]." Indeed, the majority quoted verbatim this court's findings of fact, and observed "the facts contained in these summaries are either undisputed or, like whether and how much Rice and Hartman owe Great Seneca, are useful background but are ultimately irrelevant to the outcome of the cases." 569 F.3d 606, 609, n. 2.

The Magistrate's opinion suggests the falsity claims are still in issue. Doc. No. 105, pp. 2, 3, 5, 6, 7. By necessary implication arising from the mandate, the issue of falsity is foreclosed. "[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *U.S. v. McCreary-Redd*, 628 F.Supp.2d 764, 781 (E.D. Tenn. 2007) (quoting *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir.2003)). As this Court held on summary judgment, the account statement accurately reflected the existence of an account on the books of Great Seneca, and the pleading's assertion that an 'account' was attached was not false:

> [T]he U.S. Supreme Court has stated, "an ordinary open account[,] as generally defined in the commercial world ... is an unsettled claim or demand made by the creditor which appears in his account books." *Smith v. Davis,* 323 U.S. 111, 114, 65 S.Ct. 157, 89 L.Ed. 107 (1944). Under Ohio law, "[I]n an action on an account, the word 'account' has reference to the type of relationship between the parties and not to a particular book or record." *American Sec. Service, Inc. v. Baumann,* 32 Ohio App.2d 237, 245, 289 N.E.2d 373 (1972); *Mt. Sinai Hospital of Cleveland v. McCurdy,* 1979 WL 210165, *5 (1979) (" 'Account' is a word of ordinary and common acceptance in legal terminology and may be defined as an unsettled claim or demand by one person against another, based upon a transaction creating a debtor and creditor relationship between the parties which is usually but not necessarily represented by an ex parte record kept by one or both of them." (*quoting* 1 Am.Jur.2d 371, Accounts and Accounting, sec. 1)).

> [In the instant case, there is no factual dispute that at the time the at-issue account statement was created and attached to the pleading by Defendant JB & R, an unsettled claim existed on the books of Defendant Great Seneca owed by the Plaintiff in the precise amount of $2778.99. Further, there is no factual dispute over the format or content of the Exhibit A account statement attached to the state court complaint, which listed $2778.99 as the

"balance due" to Defendant Great Seneca as an assignee of Unifund and Providian as a new transaction dated August 8, 2003.

The Court finds that Plaintiff has failed to demonstrate that the statement contained in paragraph two of the state court complaint is false. Instead, Defendants have presented evidence demonstrating that it did, in fact, have a valid claim against Plaintiff and Exhibit A was a record generated by Defendant Great Seneca that accurately reflected the terms of that account. Accordingly, the Court finds that Defendants' statement in paragraph two of the state court complaint did not violate 15 U.S.C. §§ 1692e or 1692e(10).

The Sixth Circuit did not reverse either this Court's denial of Plaintiff's Motion for Summary Judgment, nor reverse the grant of summary judgment on Defendants' cross-motion on the issue of falsity. In short, "falsity" was laid to rest when the Sixth Circuit left this court's ruling on the issue intact, did not reverse the denial of Plaintiff's motion for summary judgment and failed to direct this court to reconsider the Plaintiff's Motion for Summary Judgment. See *Cooper Tire & Rubber Co.v. Farese* 248 Fed. Appx 555, 559, 2007 WL 2766146, 3 (5th Cir. 2007); *Skretvedt v. E.I. DuPont De Nemours* 372 F.3d 193, 203 (3d Cir. 2004). 17 Doc No. 118, ¶A, p. 1.

If, contrary to the foregoing, the question posed by Plaintiff remains in issue ("Whether Defendants made a false representation in the state-court collection complaint when they stated they had attached a copy of Ms. Hartman's account")(Doc. No. 118), the Sixth Circuit has more recently held the least sophisticated consumer standard was not applicable to evaluating a claim of falsity under 15 U.S.C. §§1692e and 1692f; and rather than evaluate the claim from the perspective of the least sophisticated consumer, falsity was measured from the perspective of a reasonable attorney. Compare *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 616 (6th Cir. 2009), cert. denied, 130 S.Ct. 1688 (2010) with *Lee v. Javitch, Block & Rathbone, LLP*, 601 F.3d 654, 657 (6th Cir. 2010):

JB&R cannot be held liable for filing an affidavit with language required by Ohio law, so long as the affidavit was not false. Such a truthful affidavit is neither a "false, deceptive, or misleading representation" in violation of 15 U.S.C. § 1692e nor an "unfair or unconscionable means" in violation of 15 U.S.C. § 1692f. Filing a truthful affidavit is similarly neither an "unfair or deceptive act or practice" in violation of Ohio Rev. Code § 1345.02 nor an "unconscionable act" in violation of Ohio Rev. Code § 1345.03.

601 F.3d 654, 657, n. 2.

14

Like *Lee*, the complaint filed by the Defendant contained language required by Ohio law. See Ohio Civ. R. 84; Official Form 3. ("Defendant owes plaintiff _____ dollars according to the account hereto annexed as Exhibit A. Wherefore (etc. as in Form 2)").  Similar to the affidavit required by R.C. § 2716.11 at issue in *Lee*, statements made in pleadings were made subject to Rule 11. See Ohio Civ.R. 8(E)(2). Rule 11 establishes that a signed pleading "constitutes a certificate by the attorney… that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." As the Court of Appeals held in *Lee*:

> Ohio tort law defines negligence as the failure to conduct oneself as would "a reasonably prudent man in like circumstances;" and excludes from the definition of negligence "failing to take extraordinary measures which hindsight demonstrates would have been helpful." See Bender v. First Church of the Nazarene, 59 Ohio App.3d 68, 571 N.E.2d 475, 477 (1989) (citation omitted). Reasonableness thus demands ordinary rather than extraordinary efforts, and establishing a reasonable basis to believe a given fact does not demand unprecedented investigation in a common situation. Similar standards prevail under Federal Rule of Civil Procedure 11, which contains a reasonable inquiry requirement analogous to the "reasonable basis" requirement imposed by the former Ohio Revised Code § 2716.11. This court has held that "[t]he determination of whether an attorney conducted 'reasonable inquiry' is judged by objective norms of what reasonable attorneys would have done." Silverman v. Mut. Trust Life Ins. Co. (In re Big Rapids Mall Assocs.), 98 F.3d 926, 930 (6th Cir.1996)

*Lee v. Javitch, Block & Rathbone LLP*,  601 F.3d 654, 658.

If a reasonable attorney would have concluded that "there is good ground to support" the assertion that "[a] copy of the said account is attached hereto as 'Exhibit A'," and that assertion comported with the legal meaning of the word "account," and the question of what the word account meant under Ohio law is a question of law for the Court, the issue should be evaluated from the perspective of whether a reasonable attorney would conclude that the document attached to the state court complaint was an account, not the least sophisticated consumer standard. *Lee*, supra.

Defendant offers the following discussion of the grounds for referring to the account statement attached to the pleading as an account, which also goes to its bona fide error defense. As set forth in Doc. No. 135-1 (2:04-cv-00972), Defendant JB&R was counsel of record in the case

captioned *Creditrust Corp. v. Richard* 2000 WL 896265 (Ohio App. 2 Dist.). That case was commenced July 10, 1999 in the Springfield Municipal Court, as an action for breach of contract on an assigned credit card debt. Doc. No. 135-1, p. ID. 3476-77. The complaint sought recovery of the outstanding balance owed on a purchased credit card debt at the time the account went into default, along with post-default interest. Id. Like these cases, an account statement generated by Creditrust, the assignee of the debt, was attached to the complaint. (Doc. No. 135-1, p. ID 3477). Like these cases, the account statement was formatted in a tabular manner, listing the consumer's name and address, the creditor's name and address, a statement date, account number, beginning book balance, accrued interest charges, a total due, and a "special note" from Creditrust. Id. Like these cases, the Creditrust statement also did not list any of the charges, debits, and credits comprising the balance. Unlike these cases, the Creditrust account statement made no mention that it was an "assignee", nor did it identify the original creditor. Id. Compare with Doc No. 37-3 (2:04-cv-00951); Doc. No. 49, Exhibit B (2:04-CV-00972).

The Creditrust claim was disputed and tried to the court before Magistrate Filhart. Id. at 3478-80. Citing *Am. Sec. Serv., Inc. v. Baumann* (1972), 32 Ohio App.2d 237, 242, 289 N.E.2d 373, the Court found in favor of Creditrust, but denied the claim for post-default interest. The Court adopted the ruling over the Defendant's objections, and he appealed. Id. at Page ID 3481. The issue on appeal was the sufficiency of the account statement attached to the complaint. Id. at p. 3468, 3482 ("Richard argues that Creditrust failed to comply with Civ.R. 10(D) and otherwise failed to prove the necessary elements of its action on an account, because it failed to attach to its complaint or introduce into evidence a copy of an account that was properly itemized, with a beginning balance that constituted a 'provable sum.'").

Not only did the Court of Appeals find that Creditrust's account statement satisfied the requirements of Ohio Rule 10(D), it also construed *Arthur v. Parenteau* (1995), 102 Ohio App.3d 302,

657 N.E.2d 284 (cited by the Court of Appeals), and held that by virtue of the customer account statement attached to the complaint and introduction of a portion of the original creditor's billing statements at trial, Creditrust had established the necessary elements of an action on account. Id. at 3482-3486.

> Chevy Chase Savings Bank sold Richard's account to Creditrust Corporation, a debt collection agency, on August 5, 1996….On July 10, 1998, Creditrust filed a "Complaint for Money" in the Springfield Municipal Court, alleging that Richard owed it $12,447.21 plus interest. Creditrust attached to its complaint a "Customer Account Statement," which showed a "Beginning Book Value" of $6,065.73, and "Accrued Interest Charges" from the date of the charge-off to June, 1997, which raised the balance to $12,447.21. . . .
> *     *     *
> Richard argues that because Creditrust could not provide him with a copy of all of the monthly statements "detailing the alleged purchases which resulted in the alleged debt at issue[,]" it was unable: (1) to comply with Civ.R. 10(D), which required it to attach to its complaint a copy of the account, properly itemized and containing a balance that constitutes a "provable sum"; and (2) otherwise to establish the necessary elements of an action on an account. Therefore, Richard contends, the trial court erred by awarding judgment to Creditrust on the account.
>
> Creditrust counters by arguing that it did not need to comply with Civ.R. 10(D), or to prove the elements of an action on an account, because its claim against Richard was an action on a breach of contract rather than an action on an account. Alternatively, Creditrust contends that the copy of the account it attached to its complaint and the evidence it presented at trial were sufficient to comply with Civ.R. 10(D) and to establish the essential elements of an action on account.
>
> An action on an account is founded upon contract, *Arthur v. Parenteau* (1995), 102 Ohio App.3d 302, 304, 657 N.E.2d 284, and "is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid." *Blanchester Lumber & Supply, Inc. v. Coleman* (1990), 69 Ohio App.3d 263, 265, 590 N.E.2d 770. The "cause of action does not exist with reference to each item of the account, but only as to the balance that may be due to one or the other parties[.]" *Ludwig Hommel & Co. v. Incorporated Village of Woodsfield* (1927), 115 Ohio St. 675, 681, 155 N.E. 386. The action "exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action." *Am. Sec. Serv., Inc. v. Baumann* (1972), 32 Ohio App.2d 237, 242, 289 N.E.2d 373. Civ.R. 10(D) provides, in relevant part, that "[w]hen any claim or defense is founded on an account * * *, a copy thereof must be attached to the pleading." In order to properly plead and prove an action on an account, a plaintiff must attach an account to his complaint containing the following:
>
> > An account must show the name of the party charged. It begins with a balance [,] preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and

credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due. *Brown v. Columbus Stamping & Mfg. Co.* (1967), 9 Ohio App.2d 123, 126, 223 N.E.2d 373, cited in *Gabriele v. Reagan* (1988), 57 Ohio App.3d 84, 86-87.

Civ.R. 10(D) uses the word "account" in its narrow sense: "[a] detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relationship." Black's Law Dictionary (6th Ed.1990) 18. However, with respect to the phrase, "action on an account," the word "account" refers to the type of relationship between the parties and not to a particular book or record. *Am. Sec. Serv.*, supra, at 245, 289 N.E.2d 373.

\*          \*          \*

Creditrust argues, in the alternative, that it complied with Civ.R. 10(D) and otherwise established the necessary elements of an action on an account by introducing into evidence copies of Richard's monthly statements from January, 1992, to the date of the charge-off in January, 1993, and by attaching a copy of the "Customer Account Statement" to its complaint, which: (1) contains the name of the party charged with the debt (Richard); (2) has a beginning balance that can "qualify as an account stated," since it is a "provable sum established by the monthly statements introduced into evidence"; (3) "lists items representing charges, debits and credits"; and (4) "contains a summary which permits calculation of the balance claimed to be due and owing."

However, while the Customer Account Statement attached to Creditrust's complaint lists the accrued interest charges that Creditrust added to the beginning balance, which the trial court subsequently disallowed, it does not list any of the charges, debits, and credits comprising the $6,065.73 balance. Furthermore, the $6,065.73 balance cannot be considered an account stated on the basis that it is a "provable sum" established by the monthly statements entered into evidence because Creditrust was unable to produce all of the monthly statements showing the charges, debits, and credits that would permit the calculation of the balance claimed to be due. See Brown, supra.

These observations notwithstanding, we conclude that the $6,065.73 balance listed on the final monthly statement sent to Richard by Chevy Chase Savings Bank and on the Customer Account Statement attached to Creditrust's complaint does constitute an account stated and, therefore, qualifies as a provable sum. See Id. **We further conclude that the Customer Account Statement Creditrust attached to its complaint complied with the requirements of Civ.R. 10(D) and that Creditrust established the necessary elements of an action on an account.**

The Court of Appeals decision in *Creditrust v. Richard* was released July 7, 2000. Id. at. 3482.

The "account" complaints used against Plaintiffs Rice and Hartman were both filed in October 2003. Doc No. 37-2 (2:04-cv-00951); Doc. No. 49, Exhibit A (2:04-CV-00972). There were no

intervening Ohio appellate decisions involving the sufficiency of pleading attachments in suits on purchased credit card debts between July 7, 2000 and November 1, 2003.

At the time the suits were filed against the Plaintiffs therefore, a purchased debt creditor's "customer account statement" satisfied the requirements of Rule 10(D) and was sufficient to plead an action on an account. Likewise, insufficient documentation supporting a state court lawsuit is not actionable under the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006).

Thus, judged by the "objective norms of what reasonable attorneys would have done," *Lee,* supra, Defendants were entitled to conclude there was good ground to support a pleading seeking recovery in an action on an account in October of 2003, using an account statements prepared by Great Seneca as an attachment to a suit on an account, as it was consistent with the requirements of Ohio law. *Creditrust v. Richard,* supra. As such, the pleading was not false.

**Conclusion**

For all the foregoing reasons, although Defendant does not take issue with the ultimate conclusion reached on whether certification is required, the opinion and order is nonetheless contrary to law and should be modified or set aside, to the extent it concluded that the constitutional issues are foreclosed under the appellate mandate and law of the case doctrine; to the extent it purports to establish the evidentiary standard applicable to the remaining claims, and to the extent it suggests that the falsity claim remains in issue.

Respectfully Submitted,

 /s/ Michael D. Slodov
Michael D. Slodov, SCR#0051678
JAVITCH, BLOCK, & RATHBONE LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(216) 623-0000 ext. 3057
(fax) (216) 685-3038
(e-mail) mslodov@jbandr.com
Attorneys for Defendant
