## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEBORAH L. RICE,**

           **Plaintiff,**

**v.**

**Case No.: 2:04-cv-00951**
**JUDGE SMITH**
**Magistrate Judge Kemp**

**JAVITCH BLOCK & RATHBONE, LLP,**

           **Defendant.**

**and**

**DELORES J. HARTMAN,**

           **Plaintiff,**

**v.**

**Case No.: 2:04-cv-00972**
**JUDGE SMITH**
**Magistrate Judge Kemp**

**JAVITCH BLOCK & RATHBONE, LLP,**

           **Defendant.**

## OPINION AND ORDER

Plaintiffs Deborah L. Rice and Delores J. Hartman (collectively "Plaintiffs" or "Plaintiff Rice" or "Plaintiff Hartman") initiated this lawsuit against Defendants Great Seneca Financial Corporation ("Great Seneca")[1] and Javitch, Block & Rathbone, LLP ("JB&R"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01 *et seq.* This matter is before the Court, following remand by the Sixth Circuit, on Defendant's Motions for Summary

---

[1] Defendant Great Seneca was dismissed as a party to this action on June 22, 2010. (*See* Doc. 106).

Judgment in each case (Doc. 114 in Case No. 2:04-cv-951; Doc. 147 in Case No. 2:04-cv-972). For the reasons that follow, the Court **DENIES** Defendant JB&R's Motion for Summary Judgment (Doc. 114 in Case No. 2:04-cv-951), and **DENIES** Defendant JB&R's Motion for Summary Judgment (Doc. 147 in Case No. 2:04-cv-972).

## I.    FACTUAL BACKGROUND

Plaintiffs Rice and Hartman are consumers who each opened credit card accounts with Providian National Bank.  Plaintiff Rice opened an account on or about June 26, 2000, account number xxxxxxxxxxxx3025.  Plaintiff Hartman opened an account on or about May 10, 2000, account number xxxxxxxxxxxx6579.  Plaintiffs each received the terms and conditions of the credit card, which permitted transfer or assignment of right to payment.  Plaintiff Rice used the account from July 25, 2000 through March 21, 2001, at which time the account had an outstanding balance of $1,994.88.  The account records indicate that final payment before charge off was made on April 6, 2001.  The last fees were posted to the account in November 2001, with final balance being $2,778.99.  The final statement before Plaintiff Rice's account was sold, dated January 28, 2003, reflected the $2,778.99 balance.

Plaintiff Hartman used her account from May 17, 2000 through March 20, 2001, at which time she had an outstanding balance of $2,089.33.  The account records indicate that final payment before charge off was made on February 9, 2001.  The last fees were posted to the account in September 2001, with final balance being $2,565.81.  The final statement before Plaintiff's account was sold, dated July 29, 2002, showed an unpaid balance of $2,551.30, after posting of a $14.51 credit for a class action settlement benefit to her account.

In February 2003, Providian National Bank sold Plaintiffs' accounts to Unifund CCR Partners.  Later that same month, Unifund sold the accounts to Defendant Great Seneca.  With

each sale, certain electronic information was transmitted, including the account number, name of

the debtor, address, city, state, zip, phone, current balance, charge off date, charge off amount,

last payment amount, last payment date, social security number, APR, account opening date, and

an issuer flag for each account.  Throughout this time, Plaintiffs' accounts did not accrue

additional fees and had an interest rate of 0%.  In August 2003, Defendant JB&R, on behalf of

Defendant Great Seneca, sent a validation notice to each Plaintiff.  Both Plaintiffs failed to

timely respond to the validation notice.

In October 2003, Defendant JB&R, on behalf of Defendant Great Seneca, filed civil

complaints against Plaintiff Rice in Jefferson County Court No. 2, Jefferson County, Ohio,

seeking to recover the outstanding $2,778.99 ("Rice Complaint"), and against Plaintiff Hartman

in Harrison County, seeking to recover the outstanding $2,551.30 ("Hartman Complaint").  The

state court complaint stated:

> 1. There is due the Plaintiff from the Defendant upon an account, the sum of [$2,778.99 in the Rice Complaint and $2,551.30 in the Hartman Complaint] .
>
> 2.  A copy of the said Account is attached hereto as "Exhibit A."
>
> 3. Although due demand has been made, Defendant has failed to liquidate the balance due and owing.
>
> Wherefore, the Plaintiff prays for a Judgment against the Defendant in the amount of [$2,778.99 in the Rice Complaint and $2,551.30 in the Hartman Complaint] with interest at the rate of 10% per annum from date of judgment, and costs of the within action.

(Am. Compl., Ex. A).  Attached as Exhibit A to the state court complaint in each case was an

account statement from Great Seneca, which included the account number, the closing date, the

past due amount, and the balance due on the account.  The account statement resembled an

account statement a credit card company might send to a consumer in that it had boxes for

"credit limit," "credit available," "previous balance," and "payments and credits." Each of those boxes remained empty or had a "0" in them. In addition, the statement disclosed both the original creditor and the prior owners of the account, Providian and Unifund. Ultimately, Defendants dismissed both of the state court actions without prejudice.

On October 1, 2004, Plaintiff Rice filed her original complaint (Doc. 1). The Amended Complaint was filed on April 27, 2007 (Doc. 37). Plaintiff alleges that paragraph two of the state court complaint and the Exhibit A account statement violate the FDCPA and OCSPA (*See generally* Amended Complaint). Plaintiff filed a Motion for Partial Summary Judgment, arguing that Defendants are liable for violations of the FDCPA and OCSPA (Doc. 68). Defendants filed a Notice of Claim of Unconstitutional Federal Statute (Doc. 33), arguing that: (1) the First Amendment precludes the imposition of strict liability under the FDCPA for content of a civil suit; and (2) applying FDCPA to certain pleadings and affidavits filed in state court renders the FDCPA unconstitutionally vague and overbroad, violates substantive due process, and exceeds Congress' authority under the Commerce Clause of Article I of the United States Constitution. (*See generally*, Defendants' Notice of Claim of Unconstitutional Federal Statute). The United States of America, as intervenor, filed a response to the Notice (Doc. 50), as well as a memorandum in opposition to Defendants' motions for summary judgment, limited to the unconstitutionality questions raised by Defendants (Doc. 71). Defendants JB&R and Great Seneca also filed motions for summary judgment, arguing that they are entitled to summary judgment with respect to each of Plaintiff's claims (Docs. 57 and 61).

The Court issued an Opinion and Order on May 21, 2008, granting Defendant Great Seneca's Motion for Summary Judgment, granting JB&R's Motion for Summary Judgment, and Denying Plaintiff's Motion for Partial Summary Judgment. (Doc. 82). Plaintiffs appealed and

the Sixth Circuit reversed this Court's granting of summary judgment to Defendants Great Seneca and JB&R. *See Hartman, et al. v. Great Seneca Financial Corp., et al.*, 569 F.3d 606, (6th Cir. 2009). This matter is now back before the Court on Defendant JB&R's Motion for Summary Judgment on each of Plaintiff's claims, which the Court will consider in accordance with the Sixth Circuit's decision.

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.

-5-

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    DISCUSSION

Plaintiffs Deborah Rice and Delores Hartman (collectively "Plaintiffs") allege that Defendant JB&R violated the Fair Debt Collection Practices Act ("FDCPA"). This Court's prior decision awarding summary judgment to Defendants was reversed and remanded, however, Defendant JB&R again moves for summary judgment asserting that: 1) Plaintiffs' falsity claims fail as a matter of law because the statements attached to the complaints complied with Ohio law, Rule 10(D), and the *Brown* standard for pleading an account claim and therefore were not false representations; and 2) the representations in the account statement were not materially false, deceptive or misleading.

## A.    FDCPA

In 1977, Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The Sixth Circuit has noted that the FDCPA is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations." *Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769, 774 (S.D. OH 2004) (Beckwith, J.) (*citing Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)).

Plaintiff has alleged violations of the FDCPA, 15 U.S.C. § § 1692e, 1692e(10), and 1692f. The relevant portions of those statutes are as follows:

§ 1692e.  False or misleading representations

-7-

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*　　　\*　　　\*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

§ 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C.A. § § 1692e, 1692f.

When a Court is evaluating a debt collection practice, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone*, 405 F.Supp.2d 856, 864 (S.D. Ohio 2005) (Holschuh, J.) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)). *See also*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Smith v. Transworld Systems, Inc.* 953 F.2d 1025, 1029 (6th Cir. 1992). "This standard 'protects all consumers, the gullible as well as the shrewd.'" *Id*. (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "Although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509-10 (6th Cir. 2007) (*quoting Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000) (internal citations omitted)). The *Lamar* Court explained, "this standard 'assumes that a validation notice [or, as in this case, a state court complaint] is read in its

entirely, carefully and with some elementary level of understanding.'" *Id.* at 510 (*quoting*

*Martinez v. Law Offices of David J. Stern, P.A.*, 266 B.R. 523, 532 (Bankr. S.D. Fla. 2001).

Ohio law requires that "[w]hen any claim or defense is founded on an account or other

written instrument, a copy of the account or written instrument must be attached to the

pleading." Ohio Civ. R. 10(D). Ohio courts have explained this requirement as follows:

> It is elementary that in an action on an account, a plaintiff must set forth an actual
> copy of the recorded account. The records must show the name of the party
> charged and must include the following:
> > (1) a beginning balance (zero, or a sum that can qualify as an account
> > stated, or some other provable sum);
> > (2) listed items, or an item, dated and identifiable by number or otherwise,
> > representing charges, or debits, and credits; and
> > (3) summarization by means of a running or developing balance, or an
> > arrangement of beginning balance and items which permits the calculation
> > of the amount claimed to be due.

*Arthur v. Parenteau*, 657 N.E.2d 284, 286 (Ohio Ct. App. 1995).

Defendants sued Plaintiff in state court and were therefore subject to the aforementioned

requirement. In attempting to comply with this requirement, Defendants stated in paragraph two

of the state court complaint: "A copy of the said Account is attached hereto as 'Exhibit A.'"

(*See* Hartman Ex. A to Am. Compl.). The documents attached facially resembled credit-card

statements, but were not actually copies of the Providian credit-card accounts on which Plaintiffs

Hartman and Rice were sued. Instead, the documents contained general information about the

debt that had been transferred electronically from Providian to Unifund and then to Great

Seneca. Although these documents showed a final balance due, they did not contain a listing of

debits and credits that had been made on the account. Plaintiffs assert that Defendants'

representation that Exhibit A was a copy of the account on which they were being sued is false,

deceptive, and/or misleading in violation of 15 U.S.C. §§1692e and 1692e(10), and is an unfair means of collecting a debt in violation of §1692f.

Defendants argued in response that the statements were not false and regardless, any violation was the result of bona fide error, and consequently, liability cannot attach because the bona fide error defense is available to Defendants and the Court agreed, granting summary judgment to the Defendants.

The Sixth Circuit held that:

Determining whether Great Seneca's and Javitch's representations regarding Exhibit A were false would require us to decide what "account" means under Ohio law.  However, because we conclude that Hartman and Rice have raised a genuine issue of material fact as to whether Great Seneca's and Javitch's representations were misleading or deceptive, we hold that summary judgment is inappropriate regardless of whether the designation of Exhibit A as an "account" was false.

*       *       *

Exhibit A contains no information that would enable a consumer to determine what had been charged to or paid on this account, or when the debt was accrued. The only language in the document indicating that Great Seneca is a debt collector is the word "assignee," a legal term that would not necessarily help the least sophisticated consumer understand the relationships between the parties listed.  At this stage of litigation, Hartman and Rice do not need to establish that Exhibit A would definitely mislead the least sophisticated consumer.  Instead, they need only show that there is a genuine issue of material fact as to whether Exhibit A would mislead the least sophisticated consumer.  Given the fact that the document appears to be a recent credit-card bill, which it is not, and with few indications to the contrary, there is a genuine issue of material fact as to whether this document would mislead the least sophisticated consumer.  Accordingly, summary judgment is improper.

*Hartman, et al. v. Great Seneca Financial Corp., et al.*, 569 F.3d 606, 613 (6th Cir. 2009).

-10-

In addition to holding that summary judgment in improper on Plaintiffs' FDCPA claims, the Sixth Circuit also held that summary judgment was improper on Plaintiffs' state law claims under the OCSPA and Plaintiffs' §1692f claims.

Despite the aforementioned holding by the Sixth Circuit, Defendant JB&R now moves for summary judgment raising many of the same arguments addressed in the previous summary judgment motions.  The Court, however, is bound by the aforementioned findings of the Sixth Circuit and the ultimate conclusion that summary judgment is improper on Plaintiffs' FDCPA claim because there is a genuine issue of material fact as to whether calling Exhibit A an "account" would have misled the least sophisticated consumer.  Further, summary judgment is not proper on Plaintiffs' OCSPA and §1692f claims.  Accordingly, Defendant JB&R's Motion for Summary Judgment is denied and these claims remain pending.

## B.    Bona Fide Error Defense

The FDCPA provides a bona fide-error defense that shields a debt collector from liability for violating the FDCPA in certain instances. *See* 15 U.S.C. § 1692k(c).  The bona fide-error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k.  The bona fide error defense applies to mistakes of law as well as to clerical errors.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008); *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761, 765 -767 (S.D. Ohio 1999) (Graham, J.).  "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that:  (1) the violation was unintentional; (2) the violation was a

result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Id.* at 476-77; *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

This Court previously held that even if summary judgment was not proper because of a genuine issue as to whether the least sophisticated consumer would be confused or misled, Great Seneca and JB&R had established that they were entitled to the bona fide error defense. However, the Sixth Circuit reversed on these ground as well, concluded that "Great Seneca and Javitch have not established that they qualify for the BFE defense." *Hartman*, 569 F.3d at 614. The Sixth Circuit reasoned that:

> Great Seneca and Javitch have not shown that the violation was unintentional. Indeed, Hartman and Rice assert that Great Seneca and Javitch made Exhibit A look like a credit-card statement in order to avoid Ohio law. Nor have Great Seneca and Javitch shown by a preponderance of the evidence that they maintained procedures intended to avoid the type of error that occurred. The error made by Great Seneca and Javitch was a mistake of law; they represented that Exhibit A was an account in a manner that could be found to be misleading or deceptive.

*Hartman*, 569 F.3d at 614-615. The Sixth Circuit does acknowledge, however that

> [o]ne of Javitch's managing partners stated that the believed that Ohio law permitted the use of a document like Exhibit A in a creditor's claim. This statement suggest that the violation was unintentional, but it does not detail any procedures that Great Seneca or Javitch used to ensure that mistakes of law did not occur. Great Seneca and Javitch presented no evidence that they perform ongoing FDCPA training, procure the most recent case law, or have an individual responsible for continuing compliance with the FDCPA. *See Jerman*, 538 F.3d at 477.

*Id.* Nonetheless, the Sixth Circuit does allow for the possibility of establishing the BFE defense on remand. *Id.* at 615 ("Whether Great Seneca and Javitch can establish the elements of the BFE defense by a preponderance of the evidence is an issue that may be explored further as the litigation proceeds on remand.").

-12-

Defendant JB&R appealed the Sixth Circuit decision to the United States Supreme Court, yet the Supreme Court declined to hear the case. *Javitch, Block & Rathbone, LLP v. Hartman*, 130 S. Ct. 1688 (2010).  Subsequently, in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010), the Supreme Court held that the bona fide error defense was not available for a lawyer's mistaken interpretation of the legal requirements of the FDCPA, but expressly declined to address whether a misinterpretation of the requirements of state law was the proper subject of a bona fide error defense. *Id.* at 1611.  Defendant JB&R then requested the Sixth Circuit recall its mandate to address the reversal of the Sixth Circuit's decision in the *Jerman* case, but the Court declined.  Defendant now argues that "[w]here the Supreme Court has declined to accept review of an appellate court decision, and the Court of Appeals has declined to recall its mandate, the appellate mandate governs on remand.  *Cf. Ute Indian Tribe of the Uintah and Ouray Reservation v. State of Utah*, 114 F.3d 1513, 1521-22 (10th Cir. 1997)." (Def.'s Mot. at 16).

Plaintiffs, however, argue that *Jerman* is applicable to this case.  Plaintiffs argue that "[s]ince there has been no final judgment, the "intervening-change-in-law exception" to the mandate rule is fully in force."  (Pls.' Response at 10).  Relying on *United States v. Moored*, 38 F.3d 1419, 1421-22 (6th Cir. 1994), which discussed the reopening of issues after remand where there is a subsequent contrary view of the law by the controlling authority.  Plaintiffs therefore argue that in light of *Jerman*, it is unlikely that any court will be able to justify a holding that ignorance of state law does excuse a FDCPA violation.

Nonetheless, Defendant JB&R again asserts that it is entitled to the bona fide error defense.  Defendant attempts to establish the elements of the bona fide error defense that the Sixth Circuit suggested were lacking during the prior round of summary judgment motions.

-13-

Defendant argues that Mr. Rathbone, JB&R's co-managing partner, stated that he did not intend to violate the law and demonstrated that a lawyer, similarly situated, would not have "objectively realized that his actions were in violation of law." Further, with respect to procedures designed to ensure mistakes of law did not occur, Defendant argues that Mr. Rathbone controlled the content of pleadings and their attachments by virtue of the Firm's computer system, Lawminder, and that he drafted the account complaints at issue here based on his understanding of Rule 10(D) and Ohio Official Form 3. (Def.'s Mot. at 17-18). Mr. Rathbone further stated that he believed the account statement complied with the requirements of Ohio law for attachments to actions on account claims, that his decision to use it was based on his understanding of Ohio law, as formed after a review of the decision in *Credittrust v. Richard*. (Def.'s Mot. at 18).

Further, Defendant JB&R asserts that it maintained due diligence procedures intended to avoid core legal errors, such as ongoing FDCPA monitoring and training, procured the most recent case law, had an individual responsible for continuing compliance with FDCPA, that the attorneys regularly met to discuss Ohio cases concerning retail collections and kept Mr. Rathbone apprised of developments under both Ohio and federal law, and maintained procedures to ensure mistakes of law did not occur, by limiting the number of persons who had the authority to decide what pleadings said, and what was attached to pleadings to one person – Joel Rathbone. These due diligence procedures also led Mr. Rathbone to visit Great Seneca and review their business operation to learn how their account records were maintained and the statements were generated prior to authorizing their use in Ohio. Mr. Rathbone concluded that "the records were demonstrably reliable and accurate and did in fact, constitute a business record being maintained in the ordinary course of Great Seneca's business operations." (Def.'s Mot. at 18, citing Rathbone Decl.).

Plaintiffs, however, argue that "[s]uch an argument was not good enough the first time around and this Court should reject it now. To prove it was mistaken about state law Javitch had to identify the relevant state law. Having failed to do so it cannot prevail on its bona fide error defense." (Pls.' Response at 12).

There is no question that Defendant JB&R has responded to the Sixth Circuit's suggestion that more evidence would be required to establish a bona fide error defense. However, in light of the Jerman decision and the Sixth Circuit's mandate, the Court is not convinced that Defendant has established that it is entitled to the bona fide error defense by a preponderance of the evidence. Accordingly, Defendant's Motion for Summary Judgment based on the bona fide error defense is denied.

## IV.    DISPOSITION

For all of the foregoing reasons, the Court **DENIES** Defendant JB&R's Motions for Summary Judgment (Doc. 114 in Case No. 2:04-cv-951; Doc. 147 in Case No. 2:04-cv-972).

The Clerk shall remove Documents 114 and 147 in their respective cases from the Court's pending motions list.

**IT IS SO ORDERED.**


                                              */s/ George C. Smith*
                                              **GEORGE C. SMITH, JUDGE**
                                              **UNITED STATES DISTRICT COURT**